INSURANCE COMPANY OF NORTH
AMERICA, Plaintiff,

v.

Peter PERREAULT, et al., Defendants.

No. 89–1641–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

March 31, 1992.

Dennis Rex Ferguson, Stagg, Hardy, Ferguson, Murnagham & Mathews, Tampa, Fla., for plaintiff.

Benjamin H. Hill, III, Hill, Ward & Henderson, P.A., Tampa, Fla., Michael F. Kayusa, Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, Ft. Myers, Fla., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This action is before the court on Plaintiff's motion for summary judgment against LeRoy W. Collins, Jr., filed on December 16, 1991 and the memorandum of law in opposition to the motion filed on January 2, 1992.

The complaint in this case was filed April 13, 1989 in the United States District Court in the Eastern District of Pennsylvania ("Pennsylvania action"). The named Defendants were Peter Perreault, Stanley Guski, Charles Gordon and LeRoy Collins, Jr., all designated by the Plaintiff as general partners of Carter Plaza Partners Limited II, a Florida limited partnership ("Carter Plaza").

In addition, a prior complaint was filed on April 11, 1989 by Plaintiff Insurance Company of North America (INA) in the United States District Court for the Middle District of Florida, Tampa Division ("Florida action"). That complaint was filed against Theophilus Karlton Knight, Jr., case no. 89–504–CIV–T–17(a). Following a motion to transfer venue pursuant to 28

U.S.C.A. § 1404(a), the Eastern District of Pennsylvania transferred the Pennsylvania action to Florida. On January 11, 1990, the two suits were consolidated.

A default judgment, granted in favor of Plaintiff and against Peter Perreault in the amount of $89,345.60 plus interest at $22.27 per day, was filed on July 11, 1989. A third party complaint was filed by Defendant-third party Plaintiff, LeRoy Collins, Jr., against third party defendants, K.I.G. Enterprises of Florida I, Inc. (K.I.G.), Monetary Investors Group VIII, Inc. (M.I.G.), Monetary Investment Advisors (MIA) and Theophilus Karlton Knight, Jr.

A "stipulation of consent judgment," in favor of Insurance Company of North America, was filed on September 13, 1989 by defendants Charles L. Gordon and Stanley E. Guski, in the amount of $93,428.92.

Presently before the Court is a motion for summary judgment pursuant to Fed. R.Civ.P. Rule 56(b), filed against the Defendant LeRoy W. Collins, Jr.

### BACKGROUND INFORMATION

In the instant case, Defendant states that Carter Plaza was formed to operate and improve an existing 64,640 square foot shopping center in Madeira Beach, Florida. The general partners were K.I.G. Enterprises of Florida I, Inc. (K.I.G.), a Florida corporation, and Monetary Investors Group VIII, Inc. (M.I.G.), a Michigan corporation.

Defendant alleges that thirty limited partnership units in Carter Plaza were sold at a selling price of $51,334 each. The aggregate amount totaled $1,540,000. Collins purchased one limited partnership unit in Carter Plaza according to the typical payment plan—paying cash for one-half the interest and signing a promissory note in favor of Carter Plaza for the remaining half. In addition, Collins was chairman of KIG.

Collins alleges that Carter Plaza needed immediate financing for its shopping center project and applied to Oppenheimer & Company, Inc. (Oppenheimer) for a loan. As part of the loan agreement, Carter Plaza pledged the promissory notes to Oppenheimer and applied to INA for "investment bonding" on said notes. Defendant Collins signed a personal indemnification agreement on September 14, 1984. The extent of Defendant Collins' personal liability is the central question in the Rule 56 motion, presently before the court.

Plaintiff's Fed.R.Civ.P. Rule 56 motion asserts that there exists no genuine issue as to any material fact, and INA is entitled to judgment as a matter of law. Specifically, INA alleges that Collins is individually liable to INA under the terms of the personal indemnification agreement that Defendant signed on September 14, 1984.

Plaintiff INA relies on the following facts to establish its claim of summary judgment as to Defendant Collins.

1. The general partners of Carter Plaza were K.I.G. Enterprises of Florida I, Inc. (K.I.G.) a Florida corporation, and Monetary Investors Group VIII, Inc. (M.I.G.). (Hollberg Affidavit, para. 5, Ex. C).

2. In May of 1984, Carter Plaza applied to INA for investor bonding to guarantee payment of the promissory notes executed by the limited partners. Application to INA was presented through agents and representatives acting on behalf of the limited partnership, including Grant–Hatch and Associates, Inc., of Salt Lake City, Utah (Grant–Hatch) and CPA II Financial Services, Inc., of Red Bank, New Jersey (CPA II). (Hollberg Affidavit, paras. 3 & 4).

3. The notes were to be pledged as security for proposed syndication financing by Oppenheimer & Company, Inc. to the limited partnership. (Hollberg Affidavit, para. 3, Ex. C).

4. I.N.A. alleges that the shareholders of K.I.G. were disclosed to be T.K. Knight, Peter W. Perreault and LeRoy W. Collins, Jr. The shareholders of M.I.G. were designated as V. Robert Colton, J.N. Moroun, Charles L. Gordon and Stanley E. Guski. (Hollberg Affidavit, para. 5, Ex. C).

5. In further support of the application, INA asserts that Carter Plaza submitted to INA the personal financial statements and personal background summaries of T.K. Knight, LeRoy W. Collins, Jr., and Peter

W. Perreault. (Hollberg Affidavit, para. 6, Ex. C).

6. Plaintiff alleges that the corporate general partners of Carter Plaza had a combined net worth insufficient to support the guarantee of the requested investor bonds. (Hollberg Affidavit, para. 7, Ex. C).

7. Accordingly, in order to approve the bonding program requested, INA required personal indemnification by the individual shareholders of the general partners of Carter Plaza. (Hollberg Deposition, p. 20; Hollberg Affidavit, para. 7, Ex. C).

8. Plaintiff alleges that Carter Plaza, through its representative CPA II, confirmed the personal indemnification requirement by correspondence to INA dated May 31, 1984. (Hollberg Affidavit, para. 8, Ex. D).

9. INA advised Grant–Hatch of the requirement that the individual shareholders provide full personal indemnification for the investor notes being bonded. INA subsequently confirmed its requirement for full indemnification by correspondence dated September 20, 1984, to CPA II. (Hollberg Affidavit, para. 8, Ex. E & F).

10. In support of the issuance of investor bonds for the pledged investor notes, the individual shareholders of the corporate general partners each executed personal indemnification agreements. This included LeRoy Collins, Jr., T.K. Knight, Peter Perreault, V. Robert Colton, Charles L. Gor-

don, and Stanley E. Guski. (Hollberg Affidavit, para. 10, Ex. H & I).

11. In consideration of the execution and delivery of the personal indemnification agreements, INA duly issued its investor bonds securing the pledged promissory notes of the limited partners in the aggregate amount indicated. The personal indemnification agreements obligated the individual signors for up to the full aggregate amount of $1,270,020 guaranteed by INA as surety under the investor bonds to be issued. (Hollberg Affidavit, para. 11).

12. Among the investor bonds issued were Investor Bond No. KO–1712573–4 on behalf of Peter W. Perreault, as principal, and Investor Bond No. KO–1712573–20 on behalf of Monetary Investment Advisors, Ltd., as principal. (Hollberg Affidavit para. 11, Ex. J).

13. Following the closing of the financing transaction, Oppenheimer & Company, Inc., duly assigned its interest in the pledged notes to LaSalle National Bank. (Hollberg Affidavit paras. 11 & 12, Ex. J.).

14. Peter Perreault and MIA defaulted under the terms of their promissory note obligations and claim was asserted against INA by LaSalle National Bank as assignee of the promissory notes and the obligee under the respective investor bonds issued. (Hollberg Affidavit para. 12).

15. INA paid on behalf of MIA and Peter Perreault, under the respective investor bonds, the following sums:

| DATE PAID | INVESTOR | AMOUNT PAID |
| --- | --- | --- |
| 3/31/87 | MIA | $38,606.25 |
| 3/29/88 | MIA | $32,500.00 |
| 3/29/88 | MIA | $10,000.00 |

Pursuant to the terms of the investor bonds, interest accrues upon the obligations' outstanding amount at First National Bank of Boston's prime rate plus 2%. (Hollberg Affidavit, para. 12).

15. INA pursued collection of the amounts paid under the investor bonds against LeRoy W. Collins, Jr., as a guaran-

tor under the personal indemnification agreement he executed, and (for the) incurred expenses and costs of collection in connection therewith. INA has received partial payments totalling $10,000 from MIA. (Hollberg Affidavit, para. 13, Ex. K).

16. INA claims that as of December 13, 1991, LeRoy Collins owes the following

amounts under his personal indemnification agreement: $72,245.49 in principal, $34,020.96 in accrued interest, and $250.00 in collection expenses incurred, for a total of $106,516.45. INA further claims accruing interest at the rate of $21.07 per diem and additional costs and attorney's fees incurred in connection with collection proceedings (Hollberg Affidavit, para. 14, Ex. L).

Defendant Collins, in response to the motion, asserts that there are genuine issues of fact relevant to the question as to the capacity in which LeRoy Collins signed the personal indemnification agreement. Defendant alleges the following:

1. Collins purchased one limited partnership unit in Carter Plaza. He made a partial down payment and executed a promissory note in favor of Carter Plaza. (Collins' Mem. in Oppos. p. 3).

2. Defendant alleges that Carter Plaza applied to Oppenheimer & Company, Inc. for immediate financing for its shopping center project. Carter Plaza pledged the limited partners' promissory notes to Oppenheimer & Company, Inc. (Oppenheimer). (Collins' Mem. in Oppos. p. 3).

3. Defendant alleges that Carter Plaza was also required to obtain "bonding" for the promissory notes. Carter Plaza applied to Insurance Company of North America to obtain the required "investor bonds". (Collins' Mem. in Oppos. p. 3).

4. Defendant asserts that he did not have any direct discussions with INA about the personal indemnification agreement at the time of signing. (Collins' Mem. in Oppos. p. 3, p. 7, Collins Dep. at p. 23).

5. Collins states that personal indemnification agreements were executed by Peter Perreault, Charles Gordon, Stanley Guski, LeRoy Collins, Jr. and T.K. Knight, Jr. Defendant asserts that he signed the agreement in a representative capacity on behalf of KIG. (Collins' Deposition at p. 23 & Collins' Mem. in Oppos. p. 4, p. 8, p. 9).

6. Furthermore, the Defendant alleges that two others also signed in a representative capacity for KIG. (Collins Deposition at p. 23).

7. Defendant further alleges that the personal indemnification agreement is ambiguous and subject to different interpretations. One example cited: the agreement indicates that Collins was signing in a representative capacity when stating "the undersigned is executing as a general partner of Carter Plaza." Collins asserts he was not a general partner of Carter Plaza but an officer of one of its corporate general partners (KIG). (Collins' Mem. in Oppos. p. 8, 9).

8. Defendant states that the agreement demonstrates the representative capacity of Collins by its blank signature line preceded by the word "By." In addition, the agreement shows the representative capacity through its reference to a "seal"—presumably the corporate seal of Carter Plaza—in the text prior to the signature line. (Collins' Mem. in Oppos. p. 9).

9. Parol evidence is admissible to determine the capacity in which Collins signed the agreement and to explain the ambiguity existing on the face of the personal indemnification agreement. (Collins' Mem. in Oppos. p. 8, 9).

### STANDARDS OF REVIEW

A motion for Summary Judgment is made by the claimant under Federal Rule of Civil Procedure 56(a). If the Defending party moves for Summary Judgment the proper rule to utilize is Fed.R.Civ.P. 56(b). Since the moving party in this case is the Plaintiff the proper rule is Fed.R.Civ.P. 56(a) which states:

> *For Claimant.* A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

In this Circuit, summary judgment should only be entered when the mov-

ing party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–997 (5th Cir.1979). A factual dispute is for the trier of fact and precludes summary judgment.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court of the United States held:

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274. This Court has examined the motion, response, affidavits and depositions and determined that Defendant Collins has carried his burden by establishing that a genuine issue of material fact exists.

The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1988), determined that mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be no genuine issue of material fact. The Supreme Court also stated that as to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. The materiality requirement applies to the classification of the facts and does not apply to the evidentiary underpinnings of the disputes.

In Florida, the governing law is found in § 673.403 and states:

**Signature by authorized representative.—**

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument:

(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.

(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

Under F.S. § 673.403(2)(b), an authorized representative who makes a showing that: the instrument names the person represented and shows that he signed in a representative capacity, meets the statutory requirements.

■ Defendant has raised the issue that the capacity with which he signed the promissory note is in question. To withstand a Rule 56 summary judgment motion, the nonmoving party must show that the factual dispute is material according to the substantive law of the state. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1988).

### DISCUSSION

Florida courts have determined capacity of a signor to be a material issue of fact, when the contract is ambiguous *Puckett v. Codisco*, 440 So.2d 596 (Fla. 2 DCA 1983).

In such a situation, parol evidence is properly admitted to determine the capacity in which a person executes a contract. However, parol evidence is not admissible when the contracts are unambiguous. *Steele v. Hallandale, Inc.*, 125 So.2d 587 (Fla. 2 DCA 1960). When the language of the agreement is clear and unambiguous, the issue before the court is the document's proper construction under contract law.

Therefore, the first question before the Court is whether the personal indemnification agreement, signed by Defendant Collins is ambiguous under controlling substantive law.

■ The exact wording of the contract becomes critical in such a determination. Defendant Collins points to several examples. The Court first considers the word "By" next to the signature line. Use of this word by itself is not sufficient. The Court in *Giacalone v. Bernstein*, 348 So.2d 679 (Fla. 3 DCA 1977) held that the maker signed a promissory note in an individual capacity and was personally obligated thereon, even though the word "By" preceded his signature. The Court pointed out that the face of the document needed more than just the "By" to show that an individual was signing in a representative capacity. Extrinsic evidence was therefore inadmissible to show the intent of the parties.

In the present case, the personal indemnification agreement contains additional terms that point to a representative capacity. The second is a phrase "IN TESTIMONY WHEREOF, we have hereunto set our hands and affixed our *SEAL* this 14th day of September, 1984." The phrase is found just above Collins' signature. This can be interpreted, as the Defendant points out, to be the corporate seal of Carter Plaza's corporate general partner. As such, one interpretation of including this phrase in the agreement is to show a representative capacity. Another interpretation is that the Plaintiff used a ready-made form document and accidently included this phrase.

A third inclusion on the face of the document is the identification of the person represented: Carter Plaza Partners, Ltd. II. The name appears four times: the first time, following "guaranteeing payment of certain promissory notes of the limited partners of *Carter Plaza Partners, Ltd. II;*" the second, in the context of "as a guarantee of installment payment obligations undertaken by the limited partners in accordance with the terms of certain promissory notes made payable to *Carter Plaza Partners, Ltd. II;*" the third, immediately follows "which notes have been or will be assigned to the obligee as security for a loan or loans to be made by the lender to *Carter Plaza Partners, Ltd. II;*" the fourth, then follows: "WHEREAS, the undersigned are participating as general partners of *Carter Plaza Partners, Ltd. II*, and as such general partners, the undersigned do hereby affirm to have a substantial material and beneficial interest in the bond executed by the company."

A possible interpretation of this section of the document is that it identifies the person represented by the Defendant. The Defendant states that he is a limited partner of Carter Plaza and that he signed the personal indemnification agreement in a representative capacity for the general partner KIG. This is a possible interpretation of this section of the document and suggests the existence of an issue of material fact as to the capacity of the signor.

Plaintiff INA cites the case *Summit Consulting, Inc. v. J.J. Walsh Construction, Inc.*, 568 So.2d 1290 (Fla. 2 DCA 1990), to show the personal capacity of Collins through the use of the personal and individual language in the personal indemnification agreement. In *Summit*, the Court analyzed the following:

J.J. WALSH CONSTRUCTION, INC.

BY: */s/ Joe Rich pres.*
JOSEPH G. RICH
Its President
1187 S.W. 26th Avenue
Fort Lauderdale, FL 33312

BY: */s/ x Joe Rich pres.*
JOSEPH G. RICH,
Personally and Individually

The court held the document to be clear and unambiguous. Under the facts of *Summit*, the court determined that the

maker signed a promissory note first in a representative capacity and the second time in his personal capacity, despite the fact that the word personally was crossed out. In such a situation, parol evidence was not permissible to show the intent of the parties.

The facts in *Summit*, are distinguishable from the present situation. Collins did not sign the document twice, once on behalf of the corporation and once individually; instead, he signed the agreement once. In *Summit*, the court pointed out that the addition of a second signature would be a nullity if it were in the representative capacity. In the present case, signing the document in a representative capacity would add new meaning to the document. In addition, the joint and several language of the instant document could refer to the general partners as being jointly and severally liable. Or, the language could point to the personal liability of the individual signing—Defendant Collins.

Therefore the Court finds that the personal indemnification agreement that Defendant Collins signed, when viewed in its entirety, is ambiguous under the controlling substantive law of Florida. As such, parol evidence is admissible to show the intent of the parties.

Defendant Collins asserted in his Deposition at p. 23 that "I felt like we were signing for KIG. I was one of three signing for KIG". Defendant has shown that it was his intent to sign in a representative capacity. INA contends that the signature was performed in a personal capacity. In conclusion, the Court finds that there exists a material issue of fact under the controlling substantive law that would affect the outcome of the case.

The second issue before the Court is the motion for summary judgment. Defendant Collins adequately demonstrates in his memorandum in opposition to the Rule 56 motion for summary judgment, the affidavits and depositions that there exists an issue of material fact concerning the capacity in which he executed the personal in-

demnification agreement. Therefore, under the standards of *Celotex*, the existence of a factual dispute precludes summary judgment.

ORDERED that Plaintiff's motion for summary judgment be denied.

DONE and ORDERED.